1

2

3

4

5                     **IN THE UNITED STATES DISTRICT COURT**

6                     **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8   SIMONE ALLEN,                              CASE NO. CV-F-04-5244 LJO

9                 Plaintiff,                   **DECISION ON SOCIAL SECURITY**
                                               **COMPLAINT**
10       vs.                                   (Docs. 13, 15, 16.)

11  JO ANNE B. BARNHART,
    Commissioner of Social
12  Security,

13                 Defendant.
    _____/

14

15                              **INTRODUCTION**

16         Plaintiff Simone Allen ("plaintiff") seeks this Court's review of an administrative law judge's

17  ("ALJ's") decision that plaintiff is not disabled and is ineligible for disability insurance benefits and

18  Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"),

19  42 U.S.C. §§ 401-433 and 1381-1381d.  Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties

20  agreed to proceed before a United States Magistrate Judge, and by an August 27, 2004 order, this action

21  was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings.  Based on

22  review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B.

23  Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request

24  to reverse the Commissioner's decision to deny plaintiff disability insurance benefits and SSI or to

25  remand for further proceedings.

26                              **BACKGROUND**

27                        **Plaintiff's Personal Background**

28         Plaintiff is age 48, completed no less than the 11th grade, and lacks past relevant work.  (AR 15,

                                    1

1  37, 281.)

2  **Administrative Proceedings**

3       On February 1, 2002, plaintiff protectively filed with the Social Security Administration ("SSA")

4  her applications for disability insurance benefits and SSI to claim disability since September 1, 1984

5  based on Attention Deficit Hyperactivity Disorder ("ADHD"), bad left knee, asthma, depression and

6  fluid in left ear.  (AR 59, 73, 64, 263.)  With its May 28, 2002 Notices of Disapproved Claims, SSA

7  denied plaintiff's claims and determined plaintiff's condition was not disabling on any date through

8  March 31, 1986 when plaintiff was last insured for disability benefits.  (AR 41, 267.)

9       On June 24, 2002, counsel was appointed for plaintiff. (AR 38.)  On July 12, 2002, plaintiff filed

10  her Request for Reconsideration to claim she is unable to sit and concentrate due to cognitive

11  disabilities, cannot stay on task, is easy distracted, has back and knee pain, and cannot sit or stand.  (AR

12  45.)  With its September 13, 2002 Notices of Reconsideration, SSA denied plaintiff's claims and again

13  determined plaintiff's condition was not disabling on any date through when she was last insured for

14  disability benefits.  (AR 46, 272.)

15       On October 10, 2002, plaintiff filed her Request for Hearing by Administrative Law Judge to

16  claim she is "totally disabled."  (AR 50.)  After a February 10, 2003 hearing, the ALJ issued his May

17  13, 2003 decision to conclude plaintiff is not disabled,  retains the capacity for a wide range of sedentary

18  and light work, and is ineligible for disability insurance benefits and SSI.  (AR 20.)

19       After plaintiff requested review of the ALJ's decision, SSA's Appeals Council denied plaintiff's

20  request on December 18, 2003 to render the ALJ's decision as the Commissioner's final determination

21  subject to this Court's review.  (AR 6.)

22  **Medical History And Records Review**

23  ***Stanislaus County Health Services Agency***

24       Plaintiff received medical attention through the Stanislaus County Health Services Agency.  On

25  February 25, 1997, plaintiff presented with rash on her hands and was assessed with dishidrotic eczema.

26  (AR 219.)  On March 26, 1997, plaintiff was treated at the Stanislaus Medical Center emergency room

27  for an acute urinary tract infection.  (AR 218.)  On May 21, 1997, plaintiff was treated for cough and

28  asthma exacerbated by acute bronchitis.  (AR 217.)  On September 18, 1998, plaintiff was treated for

2

epigastric pain and burning and was diagnosed with peptic ulcer disease and/or gastroesophageal reflux disease.  (AR 216.)  On November 16, 1998, plaintiff complained of left knee pain and was assessed with acute left knee strain.  (AR 215.)  A diagnostic imaging report of the same date revealed a normal left knee.  (AR 210.)

On January 18, 1999, plaintiff was treated for conjunctivitis.  (AR 207.)  On March 16, 1999, plaintiff was treated from left ear pain.  (AR 206.)  In February 2001, plaintiff was treated for pregnancy.  (AR 208.)  On March 28, 2001, plaintiff was treated for a right ear cyst.  (AR 190.)  On April 24, 2001, plaintiff was treated for her asthma.  (AR 189.)  On September 17, 2001, plaintiff was assessed with asthma and probable torn medial meniscus.  (AR 27.)

On July 10, 2002, plaintiff was diagnosed with mild intermittent asthma and mild depression and was restarted on Paxil 20 mg.  (AR 180.)  An October 8, 2002 diagnostic imaging report revealed possibility of a small tear or degeneration involving the lateral meniscus.  (AR 25.)  On November 18, 2002, plaintiff's asthma medications were refilled.  (AR 24.)  On January 16, 2003, plaintiff was assessed with left thoracic strain after helping her friend move and was prescribed Motrin 800 mg.  (AR 23.)  On January 21, 2003, plaintiff complained of asthma and knee pain.  (AR 22.)  The examiner noted plaintiff's stable depression and declined to fill out plaintiff's SSI forms.  (AR 22.)

### *Stanislaus County Department Of Mental Health*

Plaintiff treated with the Stanislaus County Department of Mental Health.  In September 1998, plaintiff reported mild depression and noted that she had difficulty tracking, was easily distracted, fidgeting and talking excessively. (AR 174.)  Plaintiff participated in therapy sessions but stopped after she started to work.  (AR 170-173.)

On December 18, 2001, plaintiff returned for a mental health assessment and to seek services for depressed mood, ADHD symptoms, homelessness and domestic violence.  (AR 167.)  A mental status examination revealed plaintiff was restless, easily distracted, isolated and depressed, and fidgeted.  (AR 168.)  Plaintiff was diagnosed with depressive disorder not otherwise specified and ADHD.  (AR 162.)

January 2, 2002 notes state as to plaintiff: "SSI seeking, tends to claim that she's mentally ill.  She called herself 'looney' no [significant] thought disorder.  Client was focusing on being disable.

3

1    Long hx [history] of poly substance dependence." (AR 163.)  Plaintiff was diagnosed with depressive

2    disorder not otherwise specified and ADHD.  (AR 162, 163.)  On January 22, 2002, plaintiff complained

3    of inability to sit still and said she was depressed, withdrawn and fidgety since childhood.  (AR 156,

4    158.)   Nonetheless, the January 22, 2002 notes reflect that plaintiff does not appear withdrawn or

5    depressed, "open talking with strong voice.  No signs of thought disorder."  (AR 156.)  Plaintiff was

6    diagnosed with depressive disorder not otherwise specified, adjustment disorder depressed, and ADD

7    history.  (AR 156.)   February 26, 2002 notes reflect plaintiff had no signs of thought disorder and

8    "patient was seen shopping at Cosco alone (by this writer).  She appeared relaxed, not depressed."  (AR

9    159-161.)

10                              *David Kerwin, M.D., Treating Physician*

11        Plaintiff treated with David Kerwin, M.D. ("Dr. Kerwin"), and on December 17, 2001,

12    complained her left knee popped out of joint.  (AR 125.)  Dr. Kerwin noted plaintiff's tender left knee

13    and diagnosed depression by history, left knee pain and instability, and asthma.  (AR 125.)  Dr. Kerwin

14    recommended an MRI "ASAP" and a left knee immobilizer.  (AR 125.)  On January 10, 2002, plaintiff

15    complained of left knee pain with grinding and popping, left ear pain and aches, chest pain, and back

16    pain "getting worse."  (AR 124.)  Dr. Kerwin diagnosed asthma, left ear wax, and Adult Attention

17    Deficit Disorder ("ADD").  (AR 124.)  Dr. Kerwin prescribed a left knee MRI and left ear wash out.

18    (AR 124.) Dr. Kerwin completed a January 10, 2002 checkoff form to note his diagnosis of Adult ADD

19    and internal derangement of plaintiff's left knee.  (AR 165.)  Dr. Kerwin checked off that plaintiff is

20    permanently disabled and unable to work full or part time based on inability to "sit still or concentrate"

21    and left "knee gives way."  (AR 165.)   On January 28, 2002, plaintiff complained of left ear pain, and

22    Dr. Kerwin diagnosed earache, asthma and depression.  (AR 123.)  On January 30, 2002, plaintiff

23    complained of worsening left ear pain and whole left side of face hurting.  (AR 122.)

24                                *Psychiatric Review Technique*

25        A nonexamining physician completed an April 2, 2002 Psychiatric Review Technique to

26    conclude plaintiff has nonsevere depression not otherwise specified to result in no more than mild

27    restriction of daily living activities and difficulties in maintaining social functioning, concentration,

28    persistence or pace.  (AR 127, 130, 137.)  A second nonexamining physician affirmed such assessment.

4

1   (AR 127.)

2                         ***Alvin Zachariah, M.D., Consultative Internist***

3         Alvin Zachariah, M.D. ("Dr. Zachariah"), a board eligible internist, conducted a May 2, 2002

4   comprehensive internal medicine evaluation and noted plaintiff's chief complaints of:

5           1.        Low back pain since 1985 which is constant, decreases sleep and alleviated by Tylenol;

6           2.        Intermittent knee pain with constant popping;

7           3.        Asthma which is fine with inhaler use; and

8           4.        Depression for which plaintiff takes medication and is otherwise unremarkable.  (AR

9                 142.)

10  Dr. Zachariah further noted that plaintiff lives alone, cooks and cleans, is somewhat obese, and has some

11  difficulty to get in and out of a chair.  (AR 142, 143.)  As to range of motion, Dr. Zachariah noted pain

12  in the back of the neck with flexion, some pain in the lower back with forward flexion, and straight leg

13  raising questionably positive with pain in the lower back.  (AR 144.)  Dr. Zachariah found some lumbar

14  spine tenderness and 5/5 motor strength in upper and lower extremities.  (AR 144.)  Dr. Zachariah's

15  sensory examination was unremarkable in the upper and lower extremities and normal.  (AR 145.)  Dr.

16  Zachariah diagnosed left knee pain, depression, low back pain and asthma.  (AR 145.)

17         As to functional assessment, Dr. Zachariah opined:

18
19     The number of hours the claimant could be expected to sit and walk in an eight-hour workday would be up to six hours.  The limitation is because of her lumbar spine limitations and spasm. . . . She would need to have frequent breaks with this.

20     The number of hours the claimant could be expected to sit in an eight-hour workday would be up to six hours with frequent breaks.
21

22     Assistive device use is none.  The amount of weight the claimant could lift and carry occasionally is up to 20 pounds and frequently 10 pounds, based on lumbar range of motion and perivertebral spasm, which would limit her from moving or lifting weights

23     of any more than mentioned.

24     Postural limitations on bending, stooping, and crouching: The claimant could perform these occasionally based on limitations in lumbar motion.
25

26     Manipulative limitations on reaching, handling, fingering, and grasping [are] none.  The claimant could perform these frequently. . . . Workplace environmental limitations are none.  (AR 145.)

27

28   / / /

                                                  5

*James A. Wakefield, Jr., Ph.D., Consultative Psychologist*

James A. Wakefield, Jr., Ph.D. ("Dr. Wakefield"), conducted a psychological evaluation and prepared an undated report. (AR 33.) Plaintiff reported to Dr. Wakefield that she performed poorly in school, was in special education in high school, and went to the 12th grade but did not graduate. (AR 33.) Plaintiff further noted that during the day, she goes to her friend's shop and writes the names and phone number of customers. (AR 33.) As to plaintiff's mental status, Dr. Wakefield found plaintiff's thought processes "were direct and coherent" and her fund of information and social judgment "were adequate." (AR 34.) Dr. Wakefield questioned plaintiff's testing in that her "apparent ability during interview and her responses to the tests were discrepant and suggest that the results of the tests may underestimate her abilities." (AR 34.) According to Dr. Wakefield, on the WAIS-III, plaintiff's intellectual ability was deficient although her score "is considered an underestimate of her ability." (AR 34.)

Dr. Wakefield diagnosed anxiety disorder, not otherwise specified and borderline intellectual functioning and found a Global Assessment of Functioning ("GAF") of 55. (AR 35.) Dr. Wakefield summarized:

> Simone is a verbally expressive 45 year old woman with a history of special education beginning in high school and mental health services and homelessness as an adult. Her measured intellectual ability is in the mildly mentally retarded range with borderline range verbal comprehension and deficient non-verbal ability and working memory. Her perceptual-motor coordination is in the borderline range. Simone's academic skills are in the deficient to borderline range. It is not clear that Simone's history is consistent with mental retardation, and more background information would be helpful.
>
> . . .
>
> . . . Simone can follow simple work rules, although more complex procedures would present difficulties. Simone is able to interact with others at a minimally acceptable level. She is able to sit, stand, walk, move about, handle objects, hear, speak, and travel adequately. Simone's ability to reason and make occupational, personal, and social decisions in her best interests is intact. Her social and behavioral functioning are appropriate. Simone's concentration, persistence, and pace are deficient.
>
> Simone would benefit from a stable home and assistance managing her funds. Finding a job consistent with her abilities would also be beneficial for her. (AR 35-36.)

***Physical Residual Functional Capacity Assessments***

Antoine Dipsia, M.D. ("Dr. Dipsia"), completed a May 21, 2002 Physical Residual Functional

Capacity Assessment to conclude that plaintiff is able to: (1) lift/carry 10 pounds frequently and 20 pounds occasionally; (2) push/pull subject to the push/pull limitations; (3) stand/walk about six hours in an eight-hour workday; (4) sit about six hours in an eight-hour workday; (5) occasionally climb, stoop, kneel, crouch and crawl; and (6) frequently balance. (AR 147-149.) Dr. Dipsia found neither manipulative, visual, communicative nor environmental limitations, except avoidance of moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. (AR 150-151.) Dr. Dipsia opined that based on the medical evidence, plaintiff is able to perform activities consistent with light work. (AR 148.)

George A. Jansen, Sr. M.D. ("Dr. Jansen"), completed a September 4, 2002 Physical Residual Functional Capacity Assessment to conclude plaintiff is able to: (1) lift/carry 10 pounds frequently and 20 pounds occasionally; (2) push/pull subject to the lift/carry limitations; (3) stand/walk about six hours in an eight-hour workday; (4) sit about six hours in an eight-hour workday; (5) occasionally climb, stoop, kneel, crouch and crawl; and (6) frequently balance. (AR 224, 225.) Dr. Jansen found neither manipulative, visual, communicative nor environmental limitations, except avoidance of concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (AR 226, 227.) Dr. Jansen opined that based on the medical evidence, plaintiff could perform activities consistent with light work. (AR 224.)

***Medications***

Plaintiff's medications have included Monistat, Flagyl 500 mg, Proventil, Paxil 20 mg, Axil 30 mg, Azmacort, Albuterol, Levaguin, Robitussin, and Motrin 800 mg. (AR 69.)

**Plaintiff's Activities And Testimony**

***Reports And Questionnaires***

Plaintiff completed a February 11, 2002 Disability Report Adult to note her 5-foot-3 height and weight of 210 pounds. (AR 63.) Plaintiff claimed inability to work since September 1, 1984 based on inability to concentrate and comprehend or sit more than 10 minutes, knee cap popping out of joint, breathing affected by chemicals and perfume, and fluid in her ears to affect her balance. (AR 64, 71.) Plaintiff's ADHD "made it difficult to keep any job" and cleaning chemicals bothered her asthma. (AR 64.) Plaintiff stopped working on September 1, 1984 because of "a bad pregnancy." Plaintiff has not worked in the past 15 years. (AR 65.) Plaintiff completed the 11th grade, "was passed through," and did

7

1   not graduate.  (AR 70.)  As to her education, plaintiff states:

2           I was put in special education classes in high school, because of my hyperactivity
    [and] my comprehension.  No classes were available K thru 8.  Learning has always been

3   very difficult, I have no HS diploma.  They passed me through after 4 years.  (AR 71.)

4           Plaintiff completed a February 11, 2002 Work Activity Report – Employee to indicate that during

5   December 1997 to January 1998, she worked as an animal caretaker for Yosemite Community College

6   District and quit the job.  (AR 78.)

7           Plaintiff completed an undated Daily Activities Questionnaire to note that she is homeless and

8   spends a typical day in the park.  (AR 105.)  Plaintiff experiences difficulties neither with sleeping nor

9   caring for her personal needs.  (AR 105.)  Plaintiff prepares microwave foods, grocery shops weekly,

10  performs household chores, including vacuuming and laundry, but has severe chemical allergies to

11  require help with cleaning that requires chemicals.  (AR 106.)  Plaintiff enjoys stamp collecting and

12  reading.  (AR 106.)  Plaintiff watches television daily.  (AR 107.)  Plaintiff does not like being around

13  groups of people and does not get along with her family or coworkers.  (AR 107, 108.)  Plaintiff has

14  difficulty concentrating and is distracted easily to require instructions repeated.  (AR 109.)  Plaintiff has

15  trouble comprehending instructions, and her short attention span creates difficulty to keep on task.  (AR

16  109.)  Plaintiff's asthma prevents her to perform jobs with chemicals.  (AR 109.)  Plaintiff lost a job

17  because she was unable to keep to the assigned task.  (AR 109.)

18          Plaintiff's friend Kris Newman ("Ms. Newman") completed a March 5, 2002 Daily Activities

19  Questionnaire (Third Party Information) to note plaintiff is homeless and spends a typical day in the

20  park.  (AR 99.)  Plaintiff has no difficulties sleeping or caring for her personal needs.  (AR 100.)

21  Plaintiff prepares microwave foods and shops once a week. (AR 100.)  Chemicals cause plaintiff asthma

22  problems.  (AR 101.)  Plaintiff uses public transportation, likes stamps and coins, watches televisions,

23  and reads a little.  (AR 102.)  Plaintiff's hyperactivity is irritating to others.  (AR 102.)  Plaintiff has

24  never been social.  (AR 103.)  Plaintiff has attention deficit and needs reminding to finish something.

25  (AR 103.)

26          Plaintiff completed a June 24, 2002 Reconsideration Report to note worsening of her knee and

27  lower back.  (AR 112.)  Plaintiff is "extremely hyper," "easily distracted," and "cannot sit or stand for

28  very long," and "cannot stay on task."  (AR 112.)  Plaintiff's depression has worsened.  (AR 112.)

1   Plaintiff forgets to attend to her personal needs. (AR 114.) Plaintiff has become "very depressed and
2   stressed out" and has difficulty "walking and sitting still," "can only lift 10 or 12 lbs. at the most," and
3   "cannot concentrate for long." (AR 114.)

4   Plaintiff completed an August 6, 2002 Asthma Questionnaire to claim that everyday she
5   experiences asthma for which she takes medication. (AR 85.) Plaintiff has neither been to the
6   emergency room nor hospitalized because of an asthma attack, and her treatment has been limited to
7   medication. (AR 85-86.)

8   Plaintiff completed an August 1, 2002 Daily Activities Questionnaire to note that she is homeless
9   and that on a typical day, she sits most of the time because of difficulty breathing and walking, and
10   watches television. (AR 93.) Plaintiff experiences no sleeping difficulties and cannot be around
11   cleaning chemicals which cause asthma attacks. (AR 93.) Plaintiff prepares microwave meals, shops
12   once a week, performs household chores, including vacuuming and laundry, plays cards, collects stamps,
13   presses flowers, watches television, listens to the radio, sometimes reads magazines and newspapers,
14   and pays bills. (AR 96.) Plaintiff does not "get along with anybody." (AR 96.) Plaintiff is "easily
15   distracted," has "trouble staying on task," needs reminding to stay on task, and has problems following
16   instructions. (AR 97.) Plaintiff is unable to be exposed to chemicals, to do heavy lifting, and to walk
17   for long periods of time. (AR 97.) Plaintiff lost a job as a result of asthma problems from chemicals.
18   (AR 97.)

19   Ms. Newman completed an August 4, 2002 Daily Activities Questionnaire (Third Party
20   Information) to note that plaintiff spends a typical day watching television, experiences no sleeping
21   difficulties, needs help cleaning due to severe sensitivity to chemicals, prepares her meals without
22   assistance, shops once a week, pays her bills, performs household chores, including vacuuming and
23   laundry, takes public transportation, reads an hour a day, and is antisocial. (AR87-90.) According to
24   Ms. Newman, plaintiff's cognitive thinking skills are below normal to make staying on task difficult,
25   and her memory is poor. (AR 91, 92.)

26   ***Plaintiff's Hearing Testimony***

27   At the February 10, 2003 ALJ hearing, plaintiff testified as to her education: "I went through high
28   school, and I'm not sure whether I graduated or not. I went to the ceremony, but I don't know. I haven't

9

1   seen the school records or anything." (AR 281.)  When the ALJ referred plaintiff to her high school

2   transcript, plaintiff confirmed she had an 11th grade education. (AR 281.)

3       Plaintiff's only paid work in the last 15 years was taking care of animals part time for about a year

4   at a museum in approximately 1995. (AR 282.)  The position was temporary, and plaintiff could not

5   perform the job because there are no current openings. (AR 282, 285.)  Plaintiff has not had a full-time

6   job since 1983 because she has needed to care for her disabled son. (AR 283.)  Plaintiff could not "stay

7   with" work programs because she needed to care for her son. (AR 283.)

8       Plaintiff cannot work because of her unstable knee on which she had surgery on December 3,

9   2002 and for which she has received physical therapy. (AR 283.)  Plaintiff treats her asthma with

10   inhalers everyday. (AR 284, 289.)  Plaintiff could not work at a job where chemicals are used but does

11   not know whether she could work where chemicals are not used. (AR 285.)

12       Plaintiff is homeless although she spends her nights at her mother's home. (AR 286, 291.)

13   During the day, plaintiff is outside. (AR 286.)  At her mother's house, plaintiff washes dishes, does

14   laundry, cooks plaintiff's food, and vacuums. (AR 287.)

15       Plaintiff estimates she can walk about 10 minutes and stand five minutes but is unsure how long

16   she can sit. (AR 287.)  Plaintiff can lift 10 pounds and bend at the waist "to a certain extent." (AR 287.)

17   Plaintiff cannot climb, stoop, crouch, crawl or kneel. (AR 287.)  Plaintiff can reach to her front, side

18   and overhead with her elbow locked. (AR 288.)  Plaintiff is able to grasp with her hands and feel with

19   her fingers. (AR 288.)  Plaintiff is allergic to chemicals, pollen, dust and certain medications. (AR 289.)

20   Plaintiff becomes short of breath because of her asthma. (AR 289.)

21       Plaintiff experiences migraines about twice a month. (AR 290.)  Plaintiff has no neck pain but

22   has pain between her shoulders. (AR 290.)  Plaintiff has knee pain "all the time" which is sharp and

23   becomes worse with "walking on it a lot." (AR 290-291.)  Based on a doctor's instruction, plaintiff

24   walks "some" to help her knee pain but does not overdo it. (AR 294.)  Plaintiff no longer has a knee

25   immobilizer or brace. (AR 294.)  Plaintiff's doctor did not "brace" her leg. (AR 294.)  Plaintiff has

26   constant low back pain which is sharp. (AR 293.)  Plaintiff takes Tylenol and stretches her back to

27   relieve pain. (AR 293.)

28       Plaintiff's depression increases and decreases. (AR 294.)  Plaintiff takes medication for her

depression but forgets to take it at times.  (AR 295.)  Plaintiff experiences no side effects from medication.  (AR 295.)  Plaintiff stopped seeing a psychiatrist who told her "there's nothing she could do."  (AR 296.)

Plaintiff had problems reading and writing and was placed in classes with students with learning problems.  (AR 292.)  Plaintiff has problems with reading and writing and granted someone power of attorney to help her with legal and medical papers.  (AR 292-293.)  Plaintiff has problem to concentrate and which has gotten somewhat worse although plaintiff does not know why.  (AR 296-297.)

Plaintiff weighs 220 pounds, and her weight has fluctuated.  (AR 294.)  Plaintiff had not received medical care prior to receiving Stanislaus County treatment although she claims disability since the 1980s.  (AR 296.)

### *Vocational Expert Testimony*

Vocational expert William Richard Wetzell ("Mr. Wetzell") testified at the February 10, 2003 ALJ hearing that  plaintiff lacks "anything that can be considered past relevant work" and that her past work activity is not considered "substantial gainful activity."  (AR 298.)  When asked whether plaintiff "can find any work in the regional or national economy," Mr. Wetzell responded: "I have had clients like this who I had deemed not feasible for rehab services, i.e., no employable.  That would be my immediate opinion what I've seen in her here today."  (AR 298-299.)

### **The ALJ's Findings**

In his May 13, 2003 decision, the ALJ identified the specific issue as whether plaintiff is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  (AR 15.)  In determining that plaintiff is not disabled and is ineligible for disability insurance benefits or SSI, the ALJ found:

1.       Plaintiff has a severe medically determinable impairment of asthma but lacks an impairment which meets or equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

2.       Plaintiff's depression and alleged knee disorder are not severe.

11

3.   Plaintiff's subjective complaints of difficulty breathing, walking, remembering, and maintaining concentration and pace are not wholly credible and are uncorroborated by objective clinical evidence of impairments that could reasonably produce the severity and persistence of the alleged symptoms.

4.   Plaintiff lacks relevant work.

5.   Plaintiff has a high school education and was not in special education.

6.   Plaintiff retains the capacity for a wide range of sedentary and light work but such capacity would be slightly limited by plaintiff's asthmatic symptoms.

7.   Rule 202.17 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 ("Medical-Vocational Guidelines"), directs a decision of not disabled for an individual similar to claimant.  Plaintiffs non-exertional (environmental) restrictions are not so acute as to preclude the application of the Medical-Vocational Guidelines to claimant's circumstances.

8.   Plaintiff has not been under a disability, as defined by the Act, at any time through the date of the ALJ's decision.  The record lacks evidence to suggest disabling impairment when plaintiff last met the Act's Title II insured status requirements.  (AR 20.)

## DISCUSSION

### Standard of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

---

[1]   "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987)*.* If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Here, plaintiff claims disability since September 1, 1984 based on ADHD, bad left knee, asthma, depression and fluid in left ear.  (AR 59, 73, 64, 263.) As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that the plaintiff is not disabled is based on proper legal standards and substantial evidence.

**Plaintiff's Credibility**

Plaintiff argues that the ALJ "did not fully and fairly report or examine plaintiff's testimony" and improperly concluded that plaintiff was not completely cooperative.  The Commissioner responds that the ALJ "gave valid reasons for finding that Plaintiff's allegations of subjectively disabling symptoms were not 'wholly credible.'"

"Credibility determinations are the province of the ALJ." *Fair*, 885 F.2d at 604; *Russell v.*

13

*Bowen*, 856 F.2d 81, 83 (9ᵗʰ Cir. 1988).  "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9ᵗʰ Cir. 1995). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9ᵗʰ Cir. 2002).  If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson*, 60 F.3d at 1434 (citing *Allen*, 749 F.2d at 579 (9ᵗʰ Cir. 1984)).  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9ᵗʰ Cir. 1991).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9ᵗʰ Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9ᵗʰ Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9ᵗʰ Cir. 1995)); 20 C.F.R. § 404.1529(c).  An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* S.S.R. 96-7p.[2]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

---

[2]   Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

2.      Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3.      Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4.      Treatment, other than medication, for relief of pain;

5.      Functional restrictions;

6.      Claimant's daily activities;

7.      Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.      Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see* 20 C.F.R. §§ 404.1529, 416.929.

After thoroughly outlining the medical record, the ALJ explained his rationale to discredit plaintiff:

> As the foregoing discussion indicates, there is little evidence of incapacitating impairments.  The claimant's own statements are the principal source of "evidence" about her alleged impairments and their functional effects. While the claimant's obesity could reasonably cause some physical discomfort in her knees, the single x-ray report indicated only a possible lateral meniscus tear.  During the period relevant to this decision, the claimant has not suffered any acute asthmatic attacks. Nor has she received regular psychotherapy or been hospitalized for depression.  Progress notes describe her asthma as "mild" and indicate that her depression is stable and without acute signs or symptoms.  As noted above, the claimant has apparently sought treatment on more than one occasion with the goal of securing medical statements to support her disability claim. Finally, Dr. [Wakefield's] own observations indicate likely embellishment during standardized testing.
>
> The claimant apparently told Dr. [Wakefield] that she had been in "special education." A copy of her transcript (from San Lorenzo Valley High School, Santa Cruz County) indicates that the claimant was not in a special education course.  Moreover, the transcript also contains a notation that Ms. Allen graduated in June 1975. (Exhibit 11F). It would appear the claimant fabricated information about special education in addition to her statement that she only completed the 11th grade.  The claimant is an individual who apparently made lifestyle choices some years ago to avoid the demands of gainful employment; she is now seeking to insulate herself from the circumstances in which that choice has left her.
>
> At the hearing the claimant was not completely cooperative.  She declined to answer several questions and appeared to prevaricate in other regards.  Her testimony that she is unable to engage in various physical activities is without corroboration in the medical treatment record.  In light of the foregoing discussion, the undersigned administrative law judge found the claimant was not a highly credible witness.  (AR 18.)
>
> The ALJ properly disregarded plaintiff's unsupported, self-serving allegation of debilitating

15

1   impairments.  The medical evidence reveals minor medical issues and that plaintiff is not prevented to

2   work based on her mild asthma, stable depression, and left knee issue for which plaintiff testified she

3   had surgery and received physical therapy.  (AR 283.)  Plaintiff's conservative treatment was

4   inconsistent with her allegedly disabling symptoms.  *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th

5   Cir. 1995) ("conservative treatment" suggests "a lower level of both pain and functional limitation.");

6   *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (existence of an emotional disorder "is not per

7   se disabling", especially if "amendable to control.")

8       Plaintiff has not received documented significant care for her left knee, for which an October 8,

9   2002 diagnostic imaging report revealed a possible small tear or degeneration involving the lateral

10  meniscus.  (AR 25.) Plaintiff testified that she no longer has a knee immobilizer or brace and that her

11  doctor did not "brace" her leg.  (AR 294.)  Plaintiff testified that her doctor instructed her to walk.  (AR

12  294.)  On January 16, 2003, plaintiff reported she helped a friend move.  (AR 23.)

13      Although plaintiff uses inhalers daily for asthma, she has neither been to the emergency room

14  nor hospitalized for asthma.  (AR 85, 284, 289.)  Plaintiff received sporadic psychotherapy and has not

15  been hospitalized for mental health issues.  February 26, 2002 notes reflect plaintiff had no signs of

16  thought disorder, was seen shopping, and "appeared relaxed, not depressed." (AR 159-161.) On January

17  21, 2003, an examiner noted plaintiff's stable depression and declined to complete SSI forms. (AR 22.)

18  Plaintiff testified a psychiatrist stopped seeing her because "there's nothing" the psychiatrist "could do."

19  (AR 296.)  Plaintiff reported to Dr. Wakefield that she helps at a friend's shop.  (AR 33.)  In short,

20  plaintiff's treatment and testimony is inconsistent is her disability claims.

21      In addition, the physician-assessed functional limitations do not support plaintiff's debilitating

22  claims.  *See Bunnell*, 947 F.2d at 346 ("functional restrictions" are a factor to test credibility of disabling

23  pain allegations).  Dr. Wakefield noted that employment for plaintiff would be "beneficial."  (AR 36.)

24  Dr. Dipsia and Dr. Jansen opined plaintiff could perform activities consistent with light work.  (AR 148,

25  224.)  Dr. Zachariah indicated no inability to work.  (AR 145.)

26      The ALJ properly referenced inconsistencies in plaintiff's testimony and presentation.  The ALJ

27  pointed out Dr. Wakefield's assessment that plaintiff's "apparent ability during interview and her

28  responses to the tests were discrepant and suggest that the results of the test may underestimate her

1   abilities." (AR 17, 34.)  The ALJ correctly pointed to the contradiction between plaintiff's education

2   difficulties and her high school transcript, which shows she was not in special education classes and

3   graduated June 13, 1975.  (AR 37.)

4          The ALJ properly commented on plaintiff's demeanor at the hearing to discount plaintiff's

5   credibility.  Although the Ninth Circuit Court of Appeals disapproves of so-called "sit and squirm"

6   jurisprudence, *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985), the "inclusion of the ALJ's

7   personal observations does not render the decision improper," *Verduzco v. Apfel*, 188 F.3d 1087, 1090

8   (9th Cir. 1999) (quoting *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999));

9   *see Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (ALJ relied on claimant's demeanor at

10  hearing and found that "she seemed to engage in considerable histrionic exaggeration.").  The record

11  reflects that the ALJ did not engage in "sit and squirm" jurisprudence, and nothing suggests the ALJ's

12  comments regarding plaintiff's demeanor and ability to testify render his decision improper.

13         Plaintiff points to no meaningful error in the ALJ's evaluation of plaintiff's credibility.  The ALJ

14  made specific credibility findings to obscure any notion that he arbitrarily discredited plaintiff's

15  testimony.  This Court is not in a position to second guess the ALJ's credibility determination.

16                         **The ALJ's Evaluation Of Impairments**

17         Plaintiff contends that the ALJ failed to support with substantial evidence his "conclusions about

18  the medical evidence" and to "properly review and report the medical evidence."  The Commissioner

19  responds that plaintiff fails to "identify a lack of substantial evidence as to any particular finding."

20         Plaintiff appears to question the ALJ's finding that plaintiff has a severe medically determinable

21  impairment of asthma but lacks an impairment that meets or equals an impairment in the Listing of

22  Impairments.  As the Commissioner correctly notes, the focus is the combination of impairments, not

23  whether an individual impairment is severe.  The SSA regulations provide: "If you do not have any

24  impairment or combination of impairments which significantly limits your physical or mental ability to

25  do basic work activities, we will find that you do not have a severe impairment and are, therefore, not

26  disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" are the "abilities and aptitudes

27  necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching,

28  carrying, or handling" as well as "[u]nderstanding, carrying out, and remembering simple instructions."

1   20 C.F.R. §§ 404.1521(b)(1), (3), 416.921(b)(1), (3). At step two of the five-step disability analysis, "the

2   ALJ must considered the combined effect of all of the claimant's impairments on her ability to function,

3   and without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273,

4   1290 (9th Cir. 1996). Such inquiry "is a de minimis screening device to dispose of groundless claims."

5   *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 2297-2298

6   (1987)).

7        Plaintiff "submits" that she meets Listing 12.05 mental retardation of the Listing of Impairments

8   because of a "history of slow learning based on the schooling." Plaintiff fails to present evidence that

9   she meets Listing 12.05. In addition, plaintiff fails to support an obesity disability claim with medical

10  evidence or resulting functional limitations. As a reminder, 42 U.S.C. § 423(d)(5)(A) provides:

11          An individual shall not be considered to be under a disability unless he furnishes
            such medical and other evidence of the existence thereof as the Commissioner of Social
12          Security may require. . . . [T]here must be medical signs and findings, established by
            medically acceptable clinical or laboratory diagnostic techniques, which show the
13          existence of a medical impairment that results from anatomical, physiological, or
            psychological abnormalities which could reasonably be expected to produce the pain or
14          other symptoms alleged and which, when considered with all evidence required to be
            furnished . . . would lead to a conclusion that the individual is under a disability.
15

16       Plaintiff further argues the ALJ failed to review several impairments in the Listing of

17  Impairments. The Commissioner correctly notes that plaintiff fails to carry her burden to establish she

18  is presumptively disabled under listings she cites. "It is unnecessary to require the [Commissioner], as

19  a matter of law, to state why a claimant failed to satisfy every different section of the listing of

20  impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

21       Without a point of reference, plaintiff suggests that '[e]quivalence must be considered on remand

22  per SSR 02-01p." Plaintiff fails to expand how she satisfies criteria of a particular listing. "For a

23  claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments,

24  is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the

25  criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct.

26  885 (1990). Plaintiff fails to satisfy such burden. In sum, plaintiff points to no meaningful error in the

27  ALJ's evaluation of impairments.

28       Plaintiff questions the content of the ALJ's decision which she characterizes as including

18

1  "substantial amounts of boilerplate and general information."  Plaintiff provides no insight to support

2  her assertion.

3  **The ALJ's Evaluation Of The Physician Opinions**

4  Plaintiff criticizes the ALJ's evaluation of Dr. Kerwin's opinion.  The Commissioner contends

5  the ALJ properly rejected Dr. Kerwin's opinion as contradicted by Dr. Zacariah and as lacking

6  supporting clinical findings.

7  A treating physician's opinion is not conclusive as to a claimant's physical condition or the

8  ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted.

9  *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747,

10  751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[3]  An ALJ may reject a

11  treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in

12  form with little in the way of clinical findings to support its conclusion."  *Magallanes,* 881 F.2d at 751.

13  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

14  specific, legitimate reasons to reject the opinion.  *Matney*, 981 F.2d at 1020.

15  The Ninth Circuit has further explained:

16  To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must "'make findings setting forth specific, legitimate

17  reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

18  conflicting clinical evidence, stating his interpretation thereof, and making findings." . . . The rule . . . does not apply, however, "when the nontreating physician relies on

19  independent clinical findings that differ from the findings of the treating physician." . . . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical

20  tests, it must be viewed as substantial evidence . . .'"

21  *Magallanes*, 881 F.2d at 751(citations omitted.)

22  An ALJ may reject a treating physician's report based on a claimant's exaggerated claims.  *See,*

23  *e.g., Sandgathe*, 108 F.3d at 980.  A physician's opinion of disability "premised to a large extent upon

24  claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints

25  have been "properly discounted."  *Fair v. Bowen*, 885 F.2d 597, 605 (citing *Brawner v. Sec. of Health*

27  [3]  A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an

28  administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  The Commissioner has final responsibility to determine a claimant's residual functional capacity.  20 C.F.R. § 404.1546.

& *Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able to find a link

between [claimant's] complaints and known medical pathologies").

"[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

The ALJ explained his rejection of Dr. Kerwin's assessment:

> . . . Dr. Kerwin's January 2002 notes recite the claimant's complaints of left ear pain, asthma, back pain, and adult ADD. Dr. Kerwin's records are essentially "fill-in" and check-the-block forms. There is little or no discussion of objective clinical findings. The record lists medications taken by the claimant. Dr. Kerwin provided no assessment of the claimant's functional capacity. (AR 17.)

The ALJ properly evaluated Dr. Kerwin's assessment which is not supported by his treatment

or records. Plaintiff relies on Dr. Kerwin's brief, conclusory assessment lacking clinical support. Dr.

Kerwin's check off form is not entitled to deference. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996);

*Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical

opinions over check off forms); *see Batson v. Commissioner*, 359 F. 3d 1190, 1195 (9th Cir. 2003) (ALJ

properly discounted a physician's checklist form view which lack supportive evidence, was contradicted

by other statements and assessments of claimant's condition, and was based on claimant's subjective

descriptions). The ALJ fulfilled his obligation to resolve conflicts generated by Dr. Kerwin's

assessment, especially given Dr. Zachariah's opinion.

Plaintiff asserts the ALJ rejected Dr. Wakefield's opinion "without good reason." As to Dr.

Wakefield, the ALJ observed:

> . . . Dr. Wakefield interviewed Ms. Allen and administered standardized tests. He observed the claimant to be adequately groomed, oriented and conversational during the interview. Dr. Wakefield remarked that the claimant's "apparent ability during the interview and her responses to the tests were discrepant and suggest that the results of the test may underestimate her abilities." The physician remarked that Ms. Allen "is a verbally expressive 45-year-old woman with a history of special education beginning in high school and mental health services and homelessness as an adult." Dr. Wakefield indicated the following diagnoses: Axis I – anxiety disorder, NOS; Axis II – borderline intellectual functioning. He gave a GAF score of 55. Dr. Wakefield wrote that these diagnoses were based on the claimant's "current and past behavior." However, Dr. Wakefield apparently saw the claimant for only one visit. He has no knowledge of the

20

1    claimant's past behavior, beyond what she spoke of herself. In a summary paragraph, Dr.
2    Wakefield wrote that claimant's "ability to reason and make occupational, personal and
   social decisions in her best interest is intact."

3           . . .

4    . . . Considering the weight of the evidence, the undersigned does not [find] Dr.
   Wakefield's GAF assessment to accurately reflect the claimant's actual level of
5    functioning.

6           . . .

7    . . . Ignoring the GAF of 55, Dr. Wakefield's summary remarks are consistent with a
   finding of non-severe depression. . . . While Ms. Allen attained low scores on the WAIS-
8    III tests, the psychiatrist commented that the scores "underestimate her ability." Dr.
   Wakefield noted a clear discrepancy between the claimant's responses at different times.
9    (AR 17-18.)

10       The ALJ thoroughly analyzed Dr. Wakefield's opinion and properly discounted portions of Dr.

11 Wakefield's report based on his assessment of plaintiff's lack of cooperation during testing to question

12 results. Plaintiff has no record of mental health treatment that counters the ALJ's evaluation.

13       Plaintiff contends an inconsistency exists between the evidence and the ALJ's finding that

14 plaintiff has the residual functional capacity for a wide range of sedentary and light work slightly limited

15 by asthmatic symptoms. Plaintiff ignores Dr. Zachariah's opinion that plaintiff is able to: (1) sit and

16 walk six hours in an eight-hour workday; and (2) lift/carry up to 20 pounds occasionally and 10 pounds

17 frequently. (AR 145.) Dr. Dipsia and Dr. Jansen reached similar conclusions. (AR 147-151, 224-227.)

18 Such conclusions are consistent with light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff

19 points to no meaningful error in the ALJ's residual functional capacity finding.

20       Plaintiff notes that the ALJ "gave no basis for ignoring the GAF of 48 (AR 162) which was

21 reported by the treating source." Plaintiff ignores that the brief diagnostic impression was of a social

22 worker, not a medical source which warranted discussion. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a)

23 (qualified medical sources).

24                         **Medical-Vocational Guidelines**

25       Plaintiff points to the brief testimony of Mr. Wetzell, the vocational expert, and claims the ALJ

26 did not "correctly" use Mr. Wetzell. The Commissioner contends the ALJ correctly relied on the

27 Medical-Vocational Guidelines in that the ALJ found plaintiff's ability for sedentary and light work is

28 not significantly compromised by asthma effects.

1    In the final step of the five-step disability evaluation, the Commissioner has the burden to show,

2    in light of a claimant's residual functional capacity, he/she can engage in other substantial gainful work

3    that exists in the national economy.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The

4    Commissioner may meet this burden by testimony of a vocational expert or reference to the Medical-

5    Vocational Guidelines.  *Osenbrock*, 240 F.3d at 1162.

6    If a claimant has significant non-exertional impairments, an ALJ cannot rely on the Medical-

7    Vocational Guidelines (also known as "grids").  *Osenbrock*, 240 F.3d at 1162.  "Non-exertional

8    limitations are limitations that do not directly affect a claimant's strength."  *Buckart v. Bowen*, 856 F.2d

9    1335, 1340 (9th Cir. 1988); *see* 20 C.F.R. § 416.969a(c).  An ALJ correctly applies the Medical-

10   Vocational Guidelines when a claimant fails to establish a significant non-exertional impairment.  *Marci*

11   *v. Chater*, 93 F.3d 540, 545 (1996).  If the Medical-Vocational Guidelines fail to accurately describe a

12   claimant's limitations, an ALJ may not rely on the Medical-Vocational Guidelines alone to show the

13   availability of jobs for the claimant and must hear testimony of a vocational expert.  *Reddick v. Charter*,

14   157 F.3d 715, 729 (9th Cir. 1998); *Jones*, 760 F.2d at 998.  When vocational expert testimony is used,

15   the vocational expert must identify a specific job or jobs in the national economy having requirements

16   that the claimant's physical and mental abilities and vocational qualifications would satisfy.  *Osenbrock*

17   *v. Apfel*, 240 F.3d at 1162-1163.[4]

18   In *Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir. 1988), the

19   Ninth Circuit Court of Appeals provided ALJs guidance to address claims of non-exertional limitations:

20   [T]he fact that a non-exertional limitation is alleged does not automatically preclude
     application of the grids.  The ALJ should first determine if a claimant's non-exertional
21   limitations significantly limit the range of work permitted by his exertional limitations.
     *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986); *Blacknall v. Heckler*, 721 F.2d

22

23      [4]      The Ninth Circuit Court of Appeals has further noted:

24           When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit
        the range of work permitted by the claimant's exertional limitations, the grids are inapplicable.  *Desrosiers*,
25      846 F.2d at 577.  In such instances, the Secretary must take testimony of a vocational expert, *Jones*, 760
        F.2d at 998, and identify specific jobs within the claimant's capabilities.  *Kail v. Heckler*, 722 F.2d 1496,
26      1498 (9th Cir. 1984).  Thus, the grids will be inappropriate where the predicate for using the grids – the
        ability to perform a full range of either medium, light or sedentary activities – is not present.
27

28   *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

                                                        22

1       1179, 1181 (9th Cir. 1983); *Olde v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).

2               The ALJ must weigh conflicting evidence concerning the claimant's past work
        experience, education, and present psychological and physical impairments. The ALJ
3       then applies the grids to these factors, ensuring that the final determination will be both
        consistent with other similar cases and expeditious. The claimant may challenge the
4       sufficiency of the evidence supporting the ALJ's assessment. A non-exertional
        impairment, if sufficiently severe, may limit the claimant's functional capacity in ways
5       not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.

6               All this can be accommodated to a system of fair and expeditious disposition of
        claims by those asserting pain or other non-exertional limitations. It is not necessary to
7       permit a claimant to circumvent the guidelines simply by alleging the existence of a non-
        exertional impairment, such as pain, validated by a doctor's opinion that such
8       impairment exists. To do so frustrates the purpose of the guidelines.

9       *Desrosiers,* 846 F.2d at 577 (citing decisions from the Second, Fourth, Fifth, Sixth and Eighth Circuit

10      Courts of Appeals).

11              As noted above, plaintiff failed to establish a significant non-exertional impairment to limit the

12      range of work permitted by her exertional limitations. Plaintiff's asthma is controlled with inhalers to

13      pose no significant impairment to preclude use of the Medical-Vocational Guidelines. Plaintiff fails to

14      establish that her "reduced intellectual function" is significant, especially in light of the wealth of

15      evidence to discount plaintiff's claims. The ALJ was not required to include unsupported impairments

16      in a hypothetical to Mr. Wetzell. *See Osenbrock*, 240 F.3d at 1164. Plaintiff points to no error in the

17      ALJ's use of the Medical-Vocational Guidelines.

18                              **CONCLUSION AND ORDER**

19              For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

20      properly concluded plaintiff is not disabled.[5] This Court further finds the ALJ's decision is supported

21      by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this

22      Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability

23      insurance benefits and SSI or to remand for further proceedings. This Court DIRECTS the Court's clerk

24      to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and

25      / / /

26      / / /

27

28      [5]     This Court rejects plaintiff's claim that the ALJ's decision is legally insufficient and overly vague.

1  against plaintiff Simone Allen and to close this action.

2      IT IS SO ORDERED.

3  **Dated:    August 1, 2005**          _____/s/ Lawrence J. O'Neill_____
   66h44d                                UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28